Jasen, J.
This action, insofar as pertinent on appeal, is for malicious prosecution. The jury awarded plaintiff Elizabeth Martin $1,000 in compensatory and $4,000 in punitive damages against the City of Albany and its police officer, Patsy Deso. The Appellate Division reversed the judgment, on both the law and the facts, and dismissed the complaint. There are two issues presented for our consideration. We must decide whether the evidence was legally sufficient to sustain the jury verdict, and, if it was, whether the Appellate Division properly dismissed the complaint on the facts.
According to the evidence adduced by the plaintiff at trial, at approximately 5:40 p.m. on January 10, 1973, she and her husband Roswell were returning home in their car from a visit with a sick friend at the Albany Medical Center. Their *15 homeward route took them along Central Avenue in the City of Albany. While stopped at a traffic signal at the corner of Central Avenue and Quail Street, Mrs. Martin noticed that the vehicle of an acquaintance, who had a history of drinking problems, had been flagged over to the side of the road by a police officer. This acquaintance recognized the Martins, rolled down her car window, and asked Mrs. Martin to drive her car home. After the light had changed, the Martins drove a short distance, parked their car, and walked back to the corner. Mrs. Martin told the police officer that she did not wish to "get involved in this”, but asked whether there was anything she could do to help the woman. The officer replied, "[w]ell not for her. She is going down for the test.” Thereupon, Mrs. Martin offered to drive the woman’s car home for her. The policeman at first granted permission, but then suggested that they await the arrival of another officer. When this second officer, subsequently identified as Patsy J. Deso, appeared on the scene, he assertedly approached Mrs. Martin, put his finger under her nose, and demanded to know whether she was involved in the incident. Mrs. Martin said no, but before she could explain her presence at the scene, Officer Deso allegedly pushed her backwards. The officer declined a request to identify himself and, instead, remarked "I told you to get on the sidewalk.” He twisted Mrs. Martin’s hand behind her back, forced her onto the sidewalk, pushed her, and then placed her under arrest. Mr. Martin then intervened to protect his wife; he told the officer not to "manhandle” his wife and put his hands out against the officer. Officer Deso released Mrs. Martin momentarily, grabbed the husband and placed him under arrest also. Mrs. Martin and her acquaintance were put in a paddywagon and driven to the police station. Mr. Martin was first frisked and then placed in a second police car for the trip to the station house.
The Martins were charged, by an information filed by Officer Deso, with violating section 195.05 of the Penal Law, in that they obstructed the administration of law by interfering with an arrest. Officer Deso, in his version of the incident, contended that Mrs. Martin had several times refused his request to stand on the sidewalk and that Mr. Martin had endeavored to block the arrest of his wife. The Martins were released on cash bail and arraigned the following morning. After a two-day jury trial in the Police Court of the City of Albany, the Martins were acquitted of the criminal charges.
*16 Mrs. Martin commenced an action against the City of Albany and Officer Deso for unlawful arrest, assault and malicious prosecution. Her husband sued for false arrest and malicious prosecution. After a trial, the jury found no cause of action on the husband’s two claims and on the wife’s assault claim. However, Mrs. Martin was awarded $15,000 in compensatory damages for unlawful arrest, $1,000 compensatory damages for malicious prosecution, and $4,000 punitive damages for malicious prosecution.
Both sides took appeals to the Appellate Division. The court affirmed the judgment in favor of the defendants on the husband’s claim and directed a new trial on the issue of damages for the wife’s unlawful arrest unless she stipulated to reduce the verdict to $5,000. She has since so stipulated. The court dismissed the wife’s cause of action for malicious prosecution, with two Justices dissenting. The majority stated that "[o]n the instant record, even assuming arguendo a lack of probable cause and thus an inference of malice, the finding of malicious prosecution is against the weight of the evidence. There is absolutely no showing of malice on the part of Officer Deso. Accordingly, the claim of malicious prosecution of Elizabeth Martin must be dismissed”. (51 AD2d 596, 597.)
Mrs. Martin has appealed only from so much of the Appellate Division order as dismissed her claim for malicious prosecution. There should be a reversal and a new trial. The evidence presented by the plaintiff was legally sufficient to sustain the jury verdict in her favor. While it remained in the province of the Appellate Division to conclude that the verdict was against the weight of the evidence, the action to be taken upon such a determination is to order a new trial. When reversing, on the facts, a judgment for plaintiff entered upon a jury verdict, the Appellate Division is constitutionally precluded from dismissing the complaint.
The elements of a malicious prosecution cause of action were succinctly stated in Broughton v State of New York (37 NY2d 451, cert den sub nom. Schanbarger v Kellogg, 423 US 929). The plaintiff must establish that (1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted in actual malice. (37 NY2d, at p 457.) In this case, the first two elements are conclusively established. The plaintiff also submitted proof, *17 which if credited by a jury, as it was, would establish the lack of probable cause to commence the criminal proceeding. (See, generally, Munoz v City of New York, 18 NY2d 6; Burt v Smith, 181 NY 1, app dsmd 203 US 129.) The only serious law issue, then, is whether there was sufficient proof of actual malice.
While lack of probable cause to institute a criminal proceeding and proof of actual malice are independent and indispensable elements of a malicious prosecution action, the absence of probable cause does bear on the malice issue. Actual malice is seldom established by direct evidence of an ulterior motive on the part of the prosecutor. (Dean v Kochendorfer, 237 NY 384, 389.) This is particularly true where the prosecutor and the accused are strangers to each other at the time the criminal proceeding is initiated. In such cases, a finding of actual malice depends largely upon inferences to be reasonably drawn from the surrounding facts and circumstances. As put by the Restatement of Torts (§ 669), "[l]ack of probable cause for the initiation of criminal proceedings, in so far as it tends to show that the accuser did not believe in the guilt of the accused, is evidence that he did not initiate the proceedings for a proper purpose.” The circumstances "may show so slight a basis for the defendant’s belief in the guilt of the accused as to justify the jury in finding that he did not have that belief in the guilt of the accused which is necessary to justify the initiation of criminal proceedings, and, therefore, did not initiate them for their only proper purpose. On the other hand, the absence of reasonable grounds for belief in the guilt of the accused has little tendency to prove that the proceedings were initiated through ill will or personal hostility to the accused, and no tendency to prove that the purpose of their institution was to obtain a personal advantage.” (Restatement, Torts, Comment a, § 669.) In other words, probable cause to initiate a criminal proceeding may be so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted.
Hence, a jury may, but is not required to, infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding. (E.g., Dean v Kochendorfer, 237 NY 384, 389, supra; Halsey v New York Soc. for Suppression of Vice, 234 NY 1, 7; Heyne v Blair, 62 NY 19, 22; McKown v Hunter, 30 NY 625; Watson v City of New York, 57 Misc 2d 542, 549; Irizarry v City of New York, 79 *18 Misc 2d 346, 352; see, also, 36 NY Jur, Malicious Prosecution, § 27, pp 287-288; Prosser, Torts [4th ed], § 119, pp 848-849; 1 Harper & James, Law of Torts, § 4.6, pp 321-322.) This inference which permits the jury to infer one fact from other facts already established, really does no more than sanction the application of a process of reasoning which is based upon experience and observation. (Cf. Justice v Lang, 52 NY 323, 329; Richardson, Evidence [10th ed], § 56, p 34.)
Turning to the case before us, it should be noted that the Appellate Division reversal was predicated upon both the law and the facts. The Appellate Division could reverse on the law and dismiss the complaint only if there was no evidence upon which to base an inference of malice. We may affirm their decision, insofar as it was based on the law, only if we conclude that "by no rational process” could the jury have based a finding in favor of plaintiff on the evidence in the record. (E.g., Stein v Palisi, 308 NY 293, 296; Blum v Fresh Crown Preserve Corp., 292 NY 241, 245.) In resolving this appeal, since the plaintiff recovered a jury verdict, we should consider the facts adduced at trial in a light most favorable to the plaintiff and the plaintiff is entitled to the benefit of every favorable inference that can reasonably be drawn from the facts. (E.g., Sagorsky v Malyon, 307 NY 584, 586.)
We believe that there is evidence, which if credited by a jury, would establish a total lack of probable cause to initiate a criminal proceeding against Mrs. Martin. Thus, the trial court appropriately instructed the jury, without objection or exception, that "[i]f you find that the defendant did not have probable cause for believing the plaintiffs guilty at the time he instituted the prosecution, you may, though you are not required to, infer from that fact alone that the defendant acted maliciously.” Since there was legally sufficient evidence to support a finding of lack of probable cause, under the law of the case, as well as under well-settled decisional law, the jury was authorized by law, if they found a lack of probable cause, to infer the existence of actual malice. The Appellate Division, therefore, should not have dismissed plaintiff’s complaint on the law.
There is, however, a little more to the case. The Appellate Division also reversed on the facts, stating that, even assuming an inference of malice could be drawn, the finding of malice by the jury was against the weight of the evidence. (51 AD2d 596, 597.) The Appellate Division, of course, has the *19 power to set aside a jury verdict on the ground that the verdict is against the weight of the evidence. (E.g., 7 Weinstein-Korn-Miller, NY Civ Prac, par 5501.21.) However, in view of the State constitutional guarantee of the right to trial by jury (NY Const, art I, § 2), the Appellate Division may not, in a case triable by jury as of right, grant a final judgment based upon findings contrary to those of the jury. (E.g., Lane-Real Estate Dept. Store v Lawlet Corp., 28 NY2d 36, 45; Imbrey v Prudential Ins. Co., 286 NY 434, 441.) "The power of the Appellate Division to make new findings of fact and a final adjudication thereon is, of course, limited to cases triable by the court and does not extend to cases triable as of right by a jury.” (York Mtge. Corp. v Clotar Constr. Corp., 254 NY 128, 134; Middleton v Whitridge, 213 NY 499, 506.) In Caldwell v Nicolson (235 NY 209, 212), Chief Judge Hiscock stated: "We think that it would be something of a shock to the profession to learn that a reversal of a judgment on the ground that the weight of the evidence was against it should or would lead to a dismissal of the complaint rather than to a new trial where perhaps additional evidence might be offered to support the judgment. That a new trial instead of a dismissal follows a decision that the verdict of a jury upon some issue is against the weight of evidence, is so well settled as to require no discussion.” (See, also, 7 Weinstein-Korn-Miller, NY Civ Prac, par 5522.03; Markus v City of New York, 42 AD2d 527; Jones v Kent, 35 AD2d 622, 623 [Memorandum per Cooke, J.]; but see Casler v State of New York, 33 AD2d 305, 309 [nonjury case].)
Had the Appellate Division reversed the judgment solely upon the law, our review of the law issue would have led us to reinstate the jury verdict in favor of plaintiff. However, the Appellate Division also concluded, as is their proper and exclusive province in cases involving jury trials, that the verdict was against the weight of the evidence. To reinstate the verdict would be to implicitly review such determination, and reinstatement, therefore, is generally improper. (See, e.g., Stein v Palisi, 308 NY 293, 298-299, supra; Sagorsky v Malyon, 307 NY 584, 586, supra; 7 Weinstein-Korn-Miller, NY Civ Prac, par 5613.04; Cohen and Karger, Powers of the New York Court of Appeals, §§ 138, 139, pp 566-568; but see Knoblock v Royal Globe Ins. Co., 38 NY2d 471.) A new trial is necessary. (Lane-Real Estate Dept. Store v Lawlet Corp., 28 NY2d 36, 45, supra.)
*20 Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial granted on appellant’s cause of action for malicious prosecution.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order reversed, etc.