OPINION OF THE COURT
James F. Niehoff, J.
This is a common-law action for malicious prosecution in which the plaintiff seeks to recover damages in the sum of $10,300,000. The action arises out of the prosecution of the plaintiff, Robert S. Neulist, for the alleged murder of his wife on May 12, 1971. Before the court is (1) a motion by the defendants County of Nassau, Matthew Bonora, John Wichmann, Andrew Mulraine, Thomas F. Heffernan, Fred Catapano and James J. Mahoney for summary judgment dismissing the complaint, and (2) a cross motion by the plaintiff for an order limiting the defendants’ papers on *161 their motion for summary judgment to the notice of motion and supporting affirmation of James H. Madden, Esq.
In seeking to have the court consider only the defendants’ notice of motion and supporting affidavit on the defendants’ motion for summary judgment, the plaintiff argues that if the court were also to consider the exhibits submitted by the defendants, an appeal would be virtually precluded because the record on appeal must contain all the exhibits and the cost of reproducing them would be prohibitive.
Plaintiff has offered no precedent for his request that the court consider the moving papers and those offered in opposition only, and ignore the exhibits proffered by the defendants. To grant this request by plaintiff would fly in the face of the clear intent of CPLR 3212, which exhorts the parties to submit evidence and proof in support of and in opposition to the motion. Consequently, plaintiff’s cross motion is denied. If the plaintiff chooses to appeal the decision of this court on the motion for summary judgment, plaintiff may ask the Appellate Division to grant him permission to appeal on the one set of exhibits submitted to this court so as to keep the cost of the appeal within reasonable bounds. Of course, it is not for this court but for the Appellate Division to say whether such relief will be granted. Suffice it to say that this court will not accede to plaintiff’s request that it not examine the exhibits.
THE FACTS
Commencing June 29, 1971 evidence was presented to a Grand Jury which resulted in the return of an indictment on July 29, 1971 charging the plaintiff Robert S. Neulist with the murder of his wife. Pursuant to the indictment the plaintiff was arrested and following his arraignment he was confined in the Nassau County Jail until August 2, 1971 when he was released on bail.
The trial commenced on February 5,1974. On March 18, 1974 following completion of the trial upon the indictment, a verdict of not guilty was rendered by the jury.
On January 30, 1975 the plaintiff, Robert S. Neulist, instituted a civil action for the alleged violation of his civil *162 rights pursuant to section 1983 of title 42 of the United States Code in the United States District Court, Eastern District, against the above-named defendants.
On February 26, 1975 the plaintiff Robert S. Neulist commenced the within action against these same defendants for malicious prosecution. The factual allegations of the two complaints are identical. The only differences in the complaints are the jurisdictional allegations and the plaintiff’s use of Roman numerals in the complaint in the Federal action and Arabic numerals in his complaint in this court.
After the commencement of the Federal action the defendants moved to dismiss the complaint in that action for failure to state a claim upon which relief could be granted, or, in the alternative, for summary judgment.
By memorandum decision and order dated March 16, 1976 Chief Judge Jacob Mishler granted judgment dismissing the civil rights action against all of the named defendants, including the movants herein.
After the dismissal of the Federal action by Judge Mishler, a motion for summary judgment was made in this court on December 19, 1978 on behalf of the defendants Cahn, Dillon, Kopilow and Friedman, the prosecutor defendants, on the ground that they were immune from civil prosecution by virtue of their positions as prosecutors. Initially, Mr. Justice Bernard F. McCaffrey denied that motion. However, upon reargument, Justice McCaffrey held that the doctrine of collateral estoppel precluded the plaintiff from litigating against the prosecutor-defendants the issue of immunity previously decided by Judge Mishler and he granted those defendants summary judgment in their favor. At that time no application was made to Justice McCaffrey for summary judgment on behalf of the police officers who were involved in the investigation of the plaintiff’s wife, the defendants who are the movants herein.
The present motion by the defendant County of Nassau and said police officers for summary judgment is premised on the ground that the action against them is barred by virtue of the doctrine of res judicata and/or collateral *163 estoppel in that Judge Mishler’s decision is controlling on the issue of the lack of good faith.
The plaintiff, Robert S. Neulist, on his part, argues that the motion should be denied because (1) Judge Mishler’s decision is not controlling; (2) the defense of res judicata and collateral estoppel is legally insufficient; (3) said defense may not be asserted in support of a motion for summary judgment where it is not pleaded as an affirmative defense in the answer; (4) the defendants are bound by the law of the case; (5) the defendants are guilty of laches; and (6) issues of fact exist which preclude summary judgment.
THE PROCEDURAL OBJECTIONS TO THE DEFENDANTS’ MOTION
The contention by the plaintiff that the defendants should be estopped from raising the affirmative defense of res judicata and/or collateral estoppel at this time because of laches, or because they failed to set forth the claim as an affirmative defense, is without merit. Although it is unclear why the county did not move on behalf of all of the defendants in its prior motion of December 19, 1978, a party may move to amend the pleadings at any time and the motion will be granted, even though late, if there is no showing of prejudice (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, C3025:5). The plaintiff has made no showing of legal prejudice herein. Similarly, a party may move for summary judgment at any time, and the fact that collateral estoppel is not raised in an answer, absent surprise or prejudice does not mandate denial of the motion especially where a plaintiff “was already aware of the facts which constituted the defense” (Darling, Inc. v City of Niagara Falls, 69 AD2d 989, 990). This is particularly true in a case such as the one at bar where the basis for the collateral estoppel (the March 16, 1976 decision and order) was not even in existence when issue was joined (March 31, 1975).
The argument that the law of the case is a bar to defendants’ motion is also without merit. The answer that was served by the defendants herein contains three affirmative defenses: (1) good faith and probable cause; (2) immunity; and (3) the pendency of the aforesaid Federal *164 action. On May 28, 1975 plaintiff moved for an order striking those defenses. By order dated June 19, 1975 Mr. Justice Pittoni held that the defense of immunity created “an issue of fact” and that, therefore, such defense should be permitted to stand pending the trial. The third affirmative defense was dismissed. The order of Mr. Justice Pittoni was affirmed by the Appellate Division.
Pointing to said decision holding that an issue of fact exists herein plaintiff claims that the defendants are bound by the law of the case. The court rejects such contention.
The thrust of the plaintiff’s argument is to the effect that because the prior court order, entered as a result of the plaintiff’s motion to dismiss the defenses set forth in the answer of the defendants, held that there was an issue of fact “with respect to immunity warranting a trial of such issue” the defendants are barred from seeking summary judgment at this time. Inasmuch as the moving defendants’ application is addressed not to the issue of immunity, but to the question of Judge Mishler’s finding that the plaintiff had failed to demonstrate that there was a lack of good faith on the part of the police officers, the court holds that there is no “law of the case” which would preclude this application.
THE SUBSTANCE OF THE DEFENDANTS’ MOTION FOR SUMMARY JUDGMENT
As noted above, it is the contention of the police officers that the decision of Chief Judge Mishler in the civil rights action results in a res judicata or collateral estoppel bar to this common-law tort action. The plaintiff, on his part, contends that the Federal court decision is not controlling and does not bar this action.
Briefly stated, the doctrine of res judicata requires a court to dismiss a subsequent identical action previously litigated by the same parties. (See, generally, 9 CarmodyWait 2d, NY Prac, § 63:201.)
In opposing the application of the doctrine to this case, the plaintiff argues that his cause of action in this court is separate and distinct from his civil rights claim in the Federal court and, so, the judgment of the Federal court is *165 not res judicata in this action. It is true that the Appellate Division in this Department has already ruled in this case that “a common-law action for malicious prosecution brought in this State may coexist with a pending Federal civil rights action based upon the same facts (Monroe v Pape, 365 US 176, 183).” (Neulist v County of Nassau, 50 AD2d 803.) However, that same court has recently held that even though a plaintiff may institute a State court common-law action as well as a Federal civil rights action, a judgment in the civil rights action in the Federal court may constitute res judicata in the State court action. The Appellate Division pointed out that the Federal civil rights action has common elements with certain common-law torts such as actions for false arrest, malicious prosecution and intentional interference with contractual and property rights and that in such cases the Federal court determination may be res judicata in the State action (Zarcone v Perry, 78 AD2d 70). As already noted, the complaint in this action for malicious prosecution is factually identical with the complaint in the Federal action for a violation of the Civil Rights Law and the cause of action in this case and that in the Federal action require virtually the same proof. Hence, it would appear that under the ruling of Zarcone (supra), this action is barred by the doctrine of res judicata. Of course, it can be argued that the Zarcone case is different from this case in that in Zarcone (1) the action in the Federal court went to a verdict and (2) the plaintiff there, who was seeking to carry on the second suit in the State court, already had procured a recovery of damages in the Federal court.
Although Zarcone differs from this case in the particulars mentioned above, the case of McKinney v City of New York (78 AD2d 884), is quite similar procedurally to the case at bar. In McKinney (supra), the Appellate Division, Second Department, was called upon to decide whether a Federal court’s dismissal order in a Federal civil rights action constituted res judicata in the State civil rights action. In their unanimous memorandum opinion the court held that the dismissal order was to be given res judicata effect. In so holding that court wrote (p 886): “Furthermore, the lack of a fact-finding hearing in Federal court is not a bar to the application of the doctrine of res judicata. *166 While the doctrine usually applies only where the first judgment is final [citations omitted] a dismissal not intended to foreclose the merits does have limited res judicata effect — it is deemed an adjudication of the ground upon which the dismissal is predicated (see Siegel, New York Practice, § 446). Therefore, a dismissal at the pleading stage is res judicata where the action is sought to be recommenced on the same pleading [citations omitted]. Further, it is clear that in those instances where the Federal court proceeding is predicated on the same basis as is the State court proceeding, Federal court determination must be given res judicata effect in New York State courts”.
In sum, it can be said that the Zarcone case differs from this case in that there the Federal action went to verdict and the plaintiff recovered and the McKinney case differs from this case in that there both the Federal and State actions were civil rights actions. However, in the court’s opinion those differences do not constitute a legal distinction which would make the Zarcone or McKinney rulings inapplicable to this case. What is controlling is that the action here is comprehended within the prior civil rights action and is based upon the same allegations of fact and the same proof.
In any event, even if the doctrine of res judicata does not apply herein, the doctrine of collateral estoppel does apply. The doctrine of collateral estoppel prohibits relitigation of even a single identical issue upon which both parties have been heard. Thus, material facts or questions which were in issue and were judicially determined in a former action are conclusively settled and may not again be litigated by the parties in a subsequent action (9 Carmody-Wait 2d, NY Prac, § 63:204).
The Federal court civil rights action was dismissed as to the defendant police officers. As mentioned above, the complaint in that action contained precisely the same allegations of wrongdoing against said defendants as the complaint does in this case. After considering those allegations of wrongdoing, Judge Mishler wrote in his order of March 16,1976: “The sole, specific claim against the defendant police officers is the failure to conduct a Neutron *167 Activation Analysis Test on David Lucas — the victim’s son and a suspect in the police investigation — to determine if he had recently fired a gun.* Police activity is not actionable under 42 U.S.C. § 1983 unless lack of good faith is shown. Pierson v. Ray, 386 U.S. 547, 87 S. Ct. 1213 (1967). The failure to make the Neutron Activation Analysis Test on Lucas does not demonstrate lack of good faith.”
Plaintiff contends that Chief Judge Mishler misunderstood the plaintiff’s allegations of wrongdoing leveled at the defendants and “for some mysterious and inexplicable reason concluded: ‘The sole, specific claim against the defendant police officers is the failure to conduct a Neutron Activation Analysis Test on David Lucas — the victim’s son and a suspect in the police investigation.’ ” In his affidavit in opposition to defendants’ motion for summary judgment plaintiff’s counsel asserts, inter alia, that “it is the Plaintiff’s claim that Defendant Police Officers are guilty of faking the results of the NAT”, as performed on the plaintiff.
Any disagreement plaintiff may have with Judge Mishler’s interpretation of his cause of action should have been brought to the attention of the Federal appellate court. That disagreement is not for this court to resolve. As it stands, unappealed, the decision is determinative of the good faith issue of the police defendants in their handling of plaintiff’s criminal case and is binding on this court.
Of what effect, then, is the factual determination of Judge Mishler that the plaintiff has failed to demonstrate a lack of good faith on the part of the police officers.
In order to prevail on a malicious prosecution cause of action, the plaintiff must establish (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice. (Martin v *168 City of Albany, 42 NY2d 13, 16; Broughton v State of New York, 37 NY2d 451, 457.)
Thus, “a want of probable cause for the institution of the original proceedings *** must be shown in order to support an action of malicious prosecution” (36 NY Jur, Malicious Prosecution, § 28). The question of what constitutes probable cause does not depend upon whether the offense has been committed in fact, nor whether the accused is guilty or innocent, but upon the prosecutor’s-belief based upon reasonable grounds. Hence, the good faith and belief of a malicious prosecution defendant is of paramount importance on the question of probable cause. (See, generally, 36 NY Jur, Malicious Prosecution, § 31.)
In addition to the absence of probable cause, malice must be alleged and proved as an independent fact in order to sustain such action. (See 36 NY Jur, Malicious Prosecution, § 25.) In New York Jurisprudence (vol 36, Malicious Prosecution, § 26) it is pointed out that: “Generally speaking, malice may consist of any personal hatred or ill will, any improper or sinister purpose, or any reck’e ss disregard of the rights of others which is inconsistent with good faith or the mere purpose to further the ends of justice.”
With respect to the case at bar, Chief Judge Mishler has already determined that the plaintiff has failed to demonstrate a lack of good faith on the part of the police officer defendants. Stated otherwise, he has, in effect, ruled that plaintiff has not shown that there was an absence of probable cause for the criminal proceeding or that the defendants were actuated by malice.
Chief Judge Mishler had before him by way of the allegations of the complaint and the papers submitted on the dismissal motions all of the plaintiff Neulist’s claims with respect to the failure of the police officers to conduct a reasonable investigation; failure of the police officers to make a full and complete statement of the facts, and the alleged falsification and suppression of evidence in connection with the presentation of his case to the Grand Jury. Nevertheless, Judge Mishler found, as a matter of law, that plaintiff had failed to demonstrate a lack of good faith on the part of the officers and granted judgment dismissing *169 the plaintiff’s action against them as a matter of law. Clearly, the finding that there was no lack of good faith by the police officers was necessary to the determination of the action before Judge Mishler. Consequently, that finding acts as a collateral bar to relitigation of the issue of lack of good faith and precludes the plaintiff from establishing either the absence of probable cause or malice, critical elements of this action for malicious prosecution, and necessitates dismissal of his complaint.

 “The test was in its experimental stage and not a formal procedure. Indeed, according to the affidavit of defendant John Wichmann, the first Neutron Activation Analysis Test performed by the police was performed on plaintiff. The police, however, did perform a paraffin test on both Lucas and plaintiff. Tests indicated that both had recently fired a gun.”