■ FRANCES G., Respondent, v VINCENT G., Appellant.—In an action for a divorce and ancillary relief, the defendant husband appeals from a judgment of the Supreme Court, Westchester County (Wood, J.), dated June 27, 1986, which, *inter alia,* awarded the plaintiff wife a divorce on the ground of constructive abandonment.

Ordered that the judgment is affirmed, with costs.

At issue is the propriety of the court's setting aside a jury verdict and awarding the plaintiff wife a judgment of divorce. At the conclusion of the trial, the jury found that the plaintiff wife had established neither cruel and inhuman treatment nor constructive abandonment by the defendant husband. The plaintiff's counsel then moved to set aside the verdict on the cruel and inhuman treatment cause of action as against the weight of the evidence. After denying said application, the court questioned counsel concerning his intentions "[w]ith respect to the second cause of action". The plaintiff's counsel thereupon moved to set aside the verdict with respect to the constructive abandonment cause of action. The latter motion was granted, the court found, as a matter of law, that the wife had been constructively abandoned, and judgment was entered accordingly.

In order to warrant a divorce on the ground of constructive abandonment within the meaning of Domestic Relations Law § 170 (2), it is necessary that one spouse not fulfill the basic obligations of the marriage relationship for a period of one year or more and that such conduct be unjustified and without the consent of the abandoned spouse *(Schine v Schine,* 31 NY2d 113, 119, *rearg denied* 31 NY2d 805; *Hage v Hage,* 112 AD2d 659, 661; *Casale v Casale,* 111 AD2d 737, 738, *lv denied* 66 NY2d 603). Accordingly, there is no ground for divorce where the complaining spouse, through long acquiescence, has consented to a sex-limited relationship with his or her spouse *(Hammer v Hammer,* 34 NY2d 545, 546; *Filippi v Filippi,* 53 AD2d 658, 659).

In the instant case, neither party disputes the fact that they had not engaged in sexual relations for more than one year prior to the institution of the divorce action. As per the plaintiff's testimony, the couple had not had sexual relations since 1980. She claimed that in the year prior thereto, the parties had only had relations on the occasions when the defendant was intoxicated and she would simply submit. As per the defendant's recollection, their sexual relationship had ceased in approximately June of 1981. The question for resolution thus becomes whether the lack of relations between the parties was mutually agreed to or was justified.

The plaintiff moved at the conclusion of trial to set aside the verdict, and the trial court awarded her judgment as a matter of law notwithstanding the verdict. Although the court, at one time, could not act on its own motion to grant judgment after verdict unless an earlier motion had been made for a directed verdict and the court had reserved decision on it, CPLR 4404 (a) authorizes the posttrial motion for judgment as a matter of law by either a party or by the court (Siegel, NY Prac § 405). "All post-trial motions may now be made on the court's own initiative where formerly the court could not move for judgment notwithstanding the verdict unless it had reserved on a motion to dismiss a complaint or counterclaim or a motion for directed verdict" (Cunningham and Sullivan, Practice Commentary, McKinney's Cons Laws of NY, Book 7B, CPLR 4404, at 242).

The standards for setting aside a verdict and granting judgment notwithstanding the verdict pursuant to CPLR 4404 (a) and directing a verdict or awarding judgment as a matter of law pursuant to CPLR 4401 are the same (Siegel, NY Prac § 405). As set forth by this court: "In considering a motion for a directed verdict, a court is not to engage in a weighing of the evidence, but instead must determine that by no rational process could the trier of facts find for the nonmoving party * * * The court must also take the view of the evidence that is most favorable to the nonmoving party * * * and the motion should not be granted where the facts are in dispute, or where different inferences may be drawn or the credibility of witnesses is in question" (Dolitsky v Bay Isle Oil Co., 111 AD2d 366).

The record in the instant case reveals no mutual decision by the parties to forego sexual relations for such a prolonged period of time. On the contrary, the plaintiff has presented ample evidence of her attempts to remedy the situation. In response to her verbal advances, the defendant would make

such comments as the following: "[W]hen you have a house in Scarsdale sex shouldn't be the focus of a marriage" and "you don't need sex in a marriage if you have a house in Scarsdale". Another "explanation" proffered by the defendant for his lack of interest in sex was that he was providing her with a form of birth control to ensure that she did not become pregnant again. The plaintiff, on several occasions, sought to obtain professional counseling in an effort to save the marriage. When she requested that he accompany her to a Dr. Muroff in order to discuss their marital problems, the defendant informed his wife that the only way he would see Dr. Muroff was with a baseball bat and that all he had ever wanted to do was to bash in Dr. Muroff's head. On only one occasion did the defendant discuss with a marriage counselor his refusal to engage in sexual relations with his wife. The defendant thereafter refused to attend any further sessions.

The husband's defense as to why he refused to engage in sexual relations with the plaintiff emanated from her reluctance to utilize a birth control device and his concern that she would again become pregnant and abort another child. The defendant also pointed to "a developing projection of hostility" of his wife towards him on a continuing basis. The plaintiff at one point expressed her hatred of the defendant and, in October 1983, had apprised him of the fact that she had not had any desire to have sexual relations with him for the previous three years.

Viewing the evidence in a light most favorable to the defendant, there was no rational process by which the trier of fact could have found that the husband had not constructively abandoned his wife. In view of the plaintiff's documented efforts to salvage the marriage, her October 1983 statement cannot reasonably be construed as an expression of consent to a sex-limited marriage. At worst, that statement can be viewed as an expression of the plaintiff's extreme displeasure with the defendant at the time it was made. On the contrary, the plaintiff has adequately supported her claim that the defendant constructively abandoned her (cf., *Nicholson v Nicholson,* 87. AD2d 645). Thus, the trial court properly granted her judgment notwithstanding the verdict (CPLR 4404 [a]; cf., *Dolitsky v Bay Isle Oil Co., supra).* Weinstein, J. P., Rubin and Eiber, JJ., concur.

Spatt, J., dissents, and votes to reverse the judgment, on the law, to reinstate the verdict, and to dismiss the plaintiff's cause of action for divorce on the ground of constructive abandonment, with the following memorandum, with which

Sullivan, J., concurs. In our view, the jury verdict in favor of the defendant husband finding no cause of action for constructive abandonment had a rational basis, was not against the weight of the evidence and was supported by the record. We therefore respectfully dissent and vote to reinstate the verdict.

The parties were married in 1968 and have three sons ranging in age from 11 to 16. In this divorce action tried before a jury, the plaintiff wife proceeded on two causes of action, namely, cruel and inhuman treatment and constructive abandonment. The jury found in favor of the defendant on both causes. The sole issue before us is the propriety of the court's setting aside the verdict in favor of the defendant on the constructive abandonment cause. We would reverse.

At the trial, the plaintiff testified that for three years, from 1980 to 1983, the parties had no sexual relations. The defendant conceded that the parties had no sexual relations for two years from 1981 to 1983. The only defense asserted by the defendant was that the parties' failure to have sexual relations was with the plaintiff's acquiescence or by mutual consent. The plaintiff testified that while she made no physical "advances" to the husband, she did initiate discussions with him on the subject, which she characterized as "verbal advances". According to the plaintiff, her husband either refused to discuss the subject or made unresponsive answers. The plaintiff sought marriage counselling with three professionals, but the defendant refused to see one of them and only consented to see another on one occasion.

The defendant testified that he had no sexual relations with his wife since June 1981 for two reasons. First, by reason of a prior abortion, he wanted her to use a diaphragm and she refused to do so. Secondly, he contended, in effect, that his wife was hostile to him, and during the period in question, she had no desire to have sexual relations with him. His defense then was that there was a mutual agreement or acquiescence not to have such relations. In support of this defense, the defendant testified as follows:

"Q Now, did you have occasion to have another conversation with your wife in October of 1983 in your bedroom?

"A Yes.

"Q Did that also concern your sexual relationship for the previous three years?

"A Yes.

"Q What did she say to you and what did you say to her at that time, if anything?

"A [My wife] indicated to me on that day that for the previous three years she had no desire to have sexual relations with me. I said nothing."

On cross-examination, the plaintiff was asked about this same conversation of October 1983 and testified as follows:

"Q Fine. Did you in October of 1983, do you recall having a conversation with your husband in the bedroom of your home in Scarsdale in which you said to him during the conversation that you hadn't desired to have sex with him for three years?

"A Saying that in '83?

"Q Yes, October of 1983, in the bedroom of your home.

"A It's not unlikely that I would have said that in '83. I don't think—

"Q Do you recall whether you said it or not?

"A No, I don't.

"Q Do you recall not saying it?

"A No."

According to the defendant, another cause of the cessation of sexual relations was hostility on the part of the plaintiff toward him. His testimony in that regard is as follows:

"Q When was the last time you and your wife had sexual relations?

"A My recollection, this is not something I have diary entries and time sheets for, it was June or so abouts of 1981.

"Q And thereafter your sexual relationship ceased?

"A Yes.

"Q And what were the factors that were present in June, 1981, which caused the relationship to cease?

"A Well, there was the factor that I just did discuss, that's Point One [diaphragm]. The second factor that did exist at that time and, in fact, even going back to December of 1980, there was a developing projection of hostility of Fran towards me on a continuing basis * * *

"Q Was she angry at you?

"A Yes. In fact, the conversation developed in which she said to me 'I hate you and I hated you all my life'."

This testimony was unrefuted.

To constitute constructive abandonment within the meaning of Domestic Relations Law § 170 (2), the conduct of the unwilling spouse must be (1) unjustified and (2) without the consent of the complaining spouse (see, Schine v Schine, 31 NY2d 113; Casale v Casale, 111 AD2d 737, lv denied 66 NY2d 603;

*Nicholson v Nicholson,* 87 AD2d 645). As stated by us in *Hammer v Hammer* (41 AD2d 831, 832; *affd* 34 NY2d 545), "[t]his court will not sanction plaintiff's unilateral termination of a marital relationship predicated on a refusal to have sexual relations when he himself, *in effect,* consented to such a relationship for the long period here involved" (emphasis supplied; *see also, Bunce v Bunce,* 74 AD2d 711, 712, *lv denied* 51 NY2d 704).

The court's charge properly gave the jury the elements of the constructive abandonment cause of action, as follows:

"As to Plaintiff's second cause of action: Constructive abandonment, has the defendant unjustifiably refused to engage in sexual relations with plaintiff without plaintiff's consent or agreement for more than one year? Yes or no * * *

"The burden of proof is on the plaintiff to establish that she did not consent to defendant's refusals to have marital relations * * *

"If you find that the plaintiff did refuse to have marital relations with the defendant, or that she consented to defendant's refusal to have marital relations, your answer to the question will be 'No.' * * *

"If, however, you should find that the plaintiff did not request the defendant to engage in sexual relations, or if so requested, that the defendant did not refuse, or that the defendant did not wrongfully refuse, *or that the plaintiff herself consented or agreed that the parties would not engage in sexual relations, then your verdict should be that the defendant has not abandoned the plaintiff"* (emphasis supplied).

That the jury was concerned with the "consent" element was demonstrated by one of their questions to the court during deliberations which inquired, "[w]hen did mutual consent of no sexual relationship occur?" The court properly responded that the issue of "mutual consent or individual consent" was a question of fact for the jury to decide.

By unanimous verdict, the jury answered the interrogatory as to the constructive abandonment cause in the negative. Thereafter, the court not only set aside this verdict but granted a judgment as a matter of law to the plaintiff, on the ground of constructive abandonment. The court found that: "there was no evidence to challenge the allegations of the complaint wherein the plaintiff alleged that the husband, without justification and without her consent and agreement, constructively abandoned her by not having sex with her." We

disagree and find that there was sufficient evidence of consent and/or acquiescence on the part of the plaintiff to support the jury verdict against her on this cause.

It is the proper function of the jury to assess the credibility of witnesses, to resolve conflicting testimony and to determine all factual questions *(see, Felt v Olson,* 51 NY2d 977; *Lopez v City of New York,* 121 AD2d 369, 370; *Hill v Bresnick,* 112 AD2d 919). Whether to set aside a jury verdict as against the weight of the evidence is essentially a factual determination, and the standard to be applied is that the jury could not have reached its decision "on any fair interpretation of the evidence" *(see, De Luca v Kameros,* 130 AD2d 705; *Quadrozzi v Norcem, Inc.,* 125 AD2d 559; *Nicastro v Park,* 113 AD2d 129).

On the other hand, the setting aside of a jury verdict and the granting of judgment to the other party as a matter of law, as occurred in this case, is only proper when " ' "there is simply no valid line of reasoning and permissible inferences which possibly lead rational [jurors] to the [contrary] conclusion reached by the jury on the basis of the evidence presented at trial" ' " *(Randolph v City of New York,* 69 NY2d 844, 847; *see also, BSL Dev. Corp. v Broad Cove,* 127 AD2d 722; *Nicastro v Park, supra,* at 132). Therefore, the Trial Judge could set aside the jury verdict in favor of the defendant and direct a verdict for the plaintiff as a matter of law only if he concluded that by no rational process could a jury find for the defendant, based on the evidence *(see, Martin v City of Albany,* 42 NY2d 13, 18; *Blum v Fresh Grown Preserve Corp.,* 292 NY 241, 245).

Our colleagues in the majority refer to the uncontradicted evidence of the plaintiff's hostility and the October 1983 conversation and find that such testimony "cannot reasonably be construed as an expression of consent to a sex-limited marriage". They further interpret this testimony as an "expression of the plaintiff's extreme displeasure with the defendant at the time it was made". In our view, the interpretation of this evidence evincing consent on the part of the plaintiff wife was properly for the consideration of the jury *(see, Nicastro v Park, supra,* at 133). "Where varying inferences may be drawn from the evidence adduced, the jury must resolve them" *(O'Neil v Port Auth.,* 111 AD2d 375, 376).

Reviewing the evidence on the issue of consent and/or acquiescence on the part of the plaintiff, we conclude that the uncontradicted testimony of the defendant that the plaintiff wife was hostile to him and stated that she had no desire to

have sexual relations with him for the previous three years was sufficient to furnish a rational basis for this verdict. Further, for the same reasons, we hold that the verdict in favor of the defendant was based on a fair interpretation of the evidence. Accordingly, the verdict should be reinstated.