**Renal ELLIS, Plaintiff,**

v.

**Michael LA VECCHIA, Defendant.**

**No. 06 Civ. 4827(LTS)(RLE).**

United States District Court,
S.D. New York.

July 22, 2008.

---

Richard J. Cardinale, Brooklyn, NY, for plaintiff.

## MEMORANDUM ORDER

LAURA TAYLOR SWAIN, District Judge.

This 42 U.S.C. § 1983 case was tried to a jury in July 2007. The jury found in Plaintiff's favor on his malicious prosecution claim, awarding Plaintiff $1.00 in nominal damages and $2600.00 in punitive damages. Defendant, New York City Police Officer Michael La Vecchia ("La Vecchia" or "Defendant") moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), to set aside the jury verdict against him. La Vecchia also moves for judgment as a matter of law on the basis of qualified immunity. In the alternative, La Vecchia moves for a new trial under Rule 59(a). Finally, La Vecchia moves pursuant to Rule 59(e) to set aside the punitive damages award.

For the following reasons, Defendant's motion is denied in its entirety.

## BACKGROUND

This action arises from an incident on August 15, 2005, when La Vecchia arrested Plaintiff Renal Ellis ("Ellis" or "Plaintiff") and issued him summonses for disorderly conduct and trespass. Ellis had gone to the 71st police precinct on that day to inquire as to why two police officers had come to his home that morning. Ellis approached the telephone switchboard operator to inform her why he was there. La Vecchia then approached Ellis and, after some conversation, told him to leave the precinct. Ellis re-entered the precinct at least once after being told to leave, and La Vecchia arrested him outside the precinct. La Vecchia handcuffed Ellis and placed him in a holding cell for at least one hour. La Vecchia then issued two summonses to Ellis, for disorderly conduct and trespass, and released him. Ellis had to make at least one court appearance to answer the charges. The criminal charges were dismissed in February 2006, when La Vecchia did not appear in court.[1]

After the criminal charges against Ellis were dismissed, Ellis commenced this action against La Vecchia, asserting claims of excessive force, false arrest, and malicious prosecution. The case was tried to a

---

1. At trial, the parties' respective characterizations of Ellis's behavior in the precinct differed considerably. Ellis testified that his behavior in the precinct was calm, and that at no time did he curse or act in a threatening manner. (Tr. 450–454.) La Vecchia, on the other hand, testified that Ellis was extremely upset in the precinct, and was shouting, flailing his arms, and cursing before his arrest. (Tr. 95: 5–7.) La Vecchia further testified that this behavior supported his decision to issue the two summonses. (Tr. 95: 15–17.)

jury from July 19, 2007, to July 23, 2007. In addition to the trial evidence concerning probable cause to arrest and prosecute Ellis for disorderly conduct and trespass, Defendant offered evidence, and argued, that he had also had probable cause to arrest Ellis for obstruction of governmental administration ("OGA"), though he had not issued Ellis a summons on that charge. (Tr. 338:1–12.) At Defendant's request, therefore, the jury was charged that, if it found that La Vecchia had probable cause to arrest Ellis for disorderly conduct, trespass, *or* OGA, it should find for Defendant on the false arrest claim. The jury was also charged on the defense of qualified immunity for La Vecchia.

The jury found in favor of La Vecchia on the excessive force and false arrest claims. On the malicious prosecution claim, it found in favor of Ellis, and additionally found that La Vecchia was not entitled to qualified immunity. The jury awarded Ellis $1.00 in nominal damages, and $2600.00 in punitive damages. In response to Defendant's contention that the verdict was inconsistent, the Court found no such inconsistency, noting that the jury must have found that there was probable cause to arrest Ellis for obstruction of governmental administration, but no probable cause to prosecute him on the charges for which he actually received summonses, trespass and disorderly conduct. (Tr. 665:4–14.)

## DISCUSSION

*Standards Under Federal Rules of Civil Procedure 50 and 59*

On a motion pursuant to Rule 50 for judgment as a matter of law, "the district court 'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.... Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Zellner v. Summerlin,* 494 F.3d 344, 370 (2d Cir.2007) (quoting *Reeves v. Sanderson Plumbing,* 530 U.S. 133, 150–51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (internal citation omitted)). The district court must "disregard all evidence favorable to the moving party that the jury is not *required* to believe." *Id.* (quoting *Reeves,* 530 U.S. at 151, 120 S.Ct. 2097) (emphasis added). The Second Circuit has cautioned that "the [district] court must bear in mind that the jury is free to believe part and disbelieve part of any witness's testimony." *Zellner,* 494 F.3d at 371. The court is also "not permitted to find as a fact a proposition that is contrary to a finding made by the jury." *Id.*

The standard for determining a motion for a new trial pursuant to Rule 59 is less restrictive than that applicable to a motion for judgment as a matter of law, because the court may weigh evidence for itself without viewing the evidence in the light most favorable to the verdict winner. *Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992) (citing *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978); *see also Bradley v. Jusino,* No. 04 Civ. 8411, 2008 WL 417753, at *3 (S.D.N.Y. Feb.14, 2008)). However, if "resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *United States v. Landau,* 155 F.3d 93, 105 (2d Cir.1998) (quoting *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir.1992), *cert denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993)). A new trial may be granted only if the court believes that "the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of*

*Hyde Park*, 163 F.3d 124, 133 (2d Cir.1998) (quoting *Song*, 957 F.2d at 1047).

 A new trial may be ordered on the issue of punitive damages alone if the jury's damage award is found excessive. "A verdict may be excessive where an identifiable error caused the jury to include a particular amount that it should have excluded, or where the award is 'intrinsically excessive in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error.'" *Morales v. City of New York*, No. 99 Civ. 10004(DLC), 2001 WL 8594 at *3 (S.D.N.Y. Jan.2, 2001) (quoting *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 165 (2d Cir.1998)). In federal question cases, a district court may find a jury award of punitive damages excessive if the award "shock[s] the judicial conscience and constitute[s] a denial of justice." *Kirsch*, 148 F.3d at 165 (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir.1988)); *see also Pescatore v. Pan American World Airways, Inc.*, 97 F.3d 1, 18 (2d Cir.1996). While the Supreme Court has repeatedly declined to "impose a bright-line ratio which a punitive damage award cannot exceed," *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), the Court has provided three guideposts for determining whether a particular defendant received adequate notice of possible sanctions, and thus whether a punitive damage award is constitutionally acceptable. *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). These guideposts are: 1) the degree of reprehensibility of the defendant's conduct, 2) the ratio of punitive damages to the actual or potential harm inflicted on the plaintiff, and 3) the civil or criminal sanctions available for comparable misconduct. *Id.*

*Motion for Judgment as a Matter of Law*

Defendant bases his Rule 50 motion for judgment as a matter of law on three grounds: first, that Plaintiff failed to prove absence of probable cause and actual malice on the malicious prosecution claim; second, that the jury verdict supported a finding that Plaintiff was not maliciously prosecuted; and third, that Defendant was entitled to qualified immunity. For the reasons stated below, these arguments are without merit.

*Sufficiency of Proof of Malicious Prosecution*

 In order to prove a claim of malicious prosecution under New York state law, a plaintiff must establish that: "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice." *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir.1991) (quoting *Russo v. New York*, 672 F.2d 1014, 1018 (2d Cir. 1982)) (internal citations omitted); *see also Pichardo v. New York Police Department*, No. 98 Civ. 429(DLC), 1998 WL 812049, at *3 (S.D.N.Y. Nov.18, 1998). To sustain a federal malicious prosecution claim under 42 U.S.C. § 1983, the plaintiff must also prove a fifth factor: a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir.2000).

Defendant argues that he should be granted judgment as a matter of law on the malicious prosecution claim because Ellis failed to prove lack of probable cause and actual malice.

 Defendant first argues that Plaintiff failed to prove that La Vecchia

lacked probable cause to arrest him for trespass. Probable cause to arrest exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn,* 361 F.3d 737, 743 (2d Cir.2004) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)). Because probable cause may dissipate between arrest and prosecution, courts must also examine probable cause to initiate the criminal proceeding. *Weg v. Macchiarola,* 729 F.Supp. 328, 335 (S.D.N.Y.1990).

Under Section 140.05 of the New York penal law, "A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises." N.Y. Penal Law § 140.05 (2008). "A person enters or remains unlawfully in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person." N.Y. Penal Law § 140.05 (2008). It was undisputed at trial that La Vecchia was a person authorized to give an order, that he asked Ellis to leave the precinct, and that Ellis re-entered the precinct.

■ Defendant claims that La Vecchia's order to leave the precinct was lawful "because plaintiff was disrupting the operations of the precinct." (Def's Mem. of Law, 11.) This argument is unavailing. It fails to construe all of the evidence in the light most favorable to Ellis. *See Zellner,* 494 F.3d at 370. Ellis' trial testimony, which the jury was entitled to credit, indicated that he was not causing a dis-

turbance at the precinct; rather, he was peaceably making an inquiry of the telephone operator when La Vecchia approached him and ordered him to leave. (Tr. 450–54.) So construed, the evidence is consistent with lack of probable cause for both the arrest and the prosecution. The Court will not re-evaluate the credibility of witnesses on a Rule 50 motion. Defendant's probable cause argument in connection with the trespass charge, therefore, is insufficient to warrant relief.

■ Defendant further argues that Plaintiff failed to prove that La Vecchia lacked probable cause to arrest him for disorderly conduct. Defendant claims that, "even if the jury were to credit plaintiffs account that he was not acting in a loud and boisterous manner," a malicious prosecution claim would fail as to the disorderly conduct charge because "the charge of disorderly conduct is not more serious than the charge of trespass or [obstruction of governmental administration]." (Def's Mem. of Law, 13–14.) Invoking the same proposition, Defendant also argues that the jury verdict precludes a claim of malicious prosecution because Ellis was prosecuted on charges that were less serious than the OGA charge on which he could have legitimately been prosecuted. (Def's Mem. of Law, 16.)

Defendant misreads a line of cases that have addressed the opposite situation, in which probable cause existed to charge a plaintiff with a minor violation and police have "tacked on" more serious charges. In such a scenario, the Second Circuit has held that, while multiple charges may arise from a single occurrence, a finding of probable cause on the lesser charge does not prohibit the plaintiff from bringing a malicious prosecution claim as to the more serious charges. *Posr,* 944 F.2d at 100; *Janetka v. Dabe,* 892 F.2d 187, 190 (2d Cir.1989). Here, the jury apparently

found that probable cause existed to charge Ellis with misdemeanor obstruction of governmental administration. Defendant has proffered no legal support for the proposition that a plaintiff may not bring a malicious prosecution claim for the addition of other charges, whether less serious or not. The mere fact that the charged offenses were less serious does not preclude a claim of malicious prosecution. Judgment as a matter of law on these grounds is therefore denied.

■ Defendant, citing the New York Court of Appeals' holding in *Martin v. City of Albany* that "probable cause to initiate a criminal proceeding may be so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted," also argues that Ellis failed to prove that La Vecchia acted with actual malice by commencing the criminal proceeding. 42 N.Y.2d 13, 396 N.Y.S.2d 612, 615, 364 N.E.2d 1304 (1977). Defendant asserts that, here, in light of La Vecchia's testimony concerning Ellis' conduct and the jury's verdict in La Vecchia's favor on the false arrest claim, probable cause was not "so totally lacking" as to justify a jury inference of malice from lack of probable cause. Defendant places undue emphasis on the *Martin* court's "so totally lacking" locution and fails, once again, to construe the evidence in the light most favorable to Plaintiff. As the Court noted at trial in rejecting Defendant's request for a "so totally lacking" jury instruction, *Martin* does not support the proposition that it is "*only* when probable cause is so totally lacking [that] malice [may] reasonably be inferred." (Tr. 358: 7–14.) (emphasis added). Rather, "a jury could find that probable cause for the charges against the plaintiff [ ] was lacking, and that finding alone would support an inference of malice." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 131 (2d Cir.1997); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) ("In most cases, the lack of probable cause-while not dispositive—'tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.'") (quoting *Conkey v. State*, 74 A.D.2d 998, 427 N.Y.S.2d 330, 332 (1980)). Since the jury apparently credited Ellis' testimony and found that there was no probable cause to arrest Plaintiff for trespass or disorderly conduct, it was entitled to infer the existence of malice from the lack of probable cause.

*Qualified Immunity*

■ Defendant argues that he is entitled to judgment as a matter of law because of qualified immunity. Qualified immunity "shields government officials performing discretionary functions 'from liability for civil damages' insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Zellner*, 494 F.3d at 367 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

■ "Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact." *Zellner*, 494 F.3d at 367 (citing *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir.2004)). When material facts that would weigh on the qualified immunity determination are not in dispute, courts should "decide the issue of qualified immunity as a matter of law, preferably on a pretrial motion for summary judgment when possible, or on a motion for a directed verdict." *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir.1990).

■ In *Zellner v. Summerlin*, decided in July 2007, the Second Circuit clarified the appropriate procedures for deter-

mining qualified immunity when material facts pertaining to immunity are in dispute. *See* 494 F.3d at 368. *Zellner* directs that the jury should resolve "any disputed facts that are material to the qualified immunity issue," so that the court may make the "ultimate determination of whether the officer's conduct was objectively reasonable...." *Id.* (citing *Stephenson v. Doe,* 332 F.3d 68, 81 (2d Cir.2003)). The jury should make these factual determinations through responses to special interrogatories. *Id.; see also Warren,* 906 F.2d at 76. Because qualified immunity is an affirmative defense, the defendant bears both the burden of proof and the obligation to request the specific factual interrogatories that would be necessary to enable the court to make the appropriate legal determination. *Zellner,* 494 F.3d at 368. "To the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question.... If the defendant does not make such a request, he is not entitled to have the court, in lieu of the jury, make the needed factual finding." *Id.*

■ In light of the *Zellner* decision, it was error for the Court in this case to submit the issue of qualified immunity to the jury, and the jury verdict against La Vecchia on the qualified immunity defense to the malicious prosecution claim must therefore be vacated. However, because Defendant failed to request special inter-

rogatories going to the factual issues relating to Plaintiff's malicious prosecution claim, the record is insufficient to permit the Court to make a finding in Defendant's favor on the qualified immunity issue as a matter of law under Rule 50. The Court "'must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence ... [and] it must disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Zellner,* 494 F.3d at 370 (quoting *Reeves,* 530 U.S. at 150–51, 120 S.Ct. 2097). The jury evidently credited enough of Plaintiff's testimony to find in his favor on the malicious prosecution claim. Without special interrogatories, it is unclear what behavior they attributed to him to find that there was probable cause to arrest him for obstruction of governmental administration. Absent such factual findings, the Court cannot determine as a matter of law that La Vecchia's conduct in issuing summonses to Ellis was objectively reasonable. By failing to request interrogatories regarding Ellis' behavior, Defendant deprived himself of the opportunity to meet his burden of proof on this issue in the post-trial context.[2] Defendant's request for judgment as a matter of law on the basis of qualified immunity is therefore denied.

### Motion for a New Trial

■ Defendant argues that the Court should grant him a new trial pursuant to Federal Rule of Civil Procedure 59(a) be-

**2.** Defendant's requested special interrogatories were: (1) whether the plaintiff was given a lawful order to leave the precinct; (2) whether the plaintiff was maliciously prosecuted for trespass; (3) whether the plaintiff was maliciously prosecuted for disorderly conduct; (4) whether Officer La Vecchia intentionally tightened plaintiff's handcuffs; (5) whether plaintiff complained to Officer La Vecchia that the handcuffs were tight and that Officer La Vecchia ignored the complaint. Defendant argued that interrogatories # 4 and # 5 would address the qualified immunity issue on the excessive force claim. The Court rejected all of these proposed special interrogatories, noting that queries (1)-(3) failed to address factual issues, and that the requests were not timely.

cause the evidence at trial weighed more heavily in Defendant's favor than in Plaintiff's. (Def's Mem. of Law, 18.) Defendant argues that "plaintiff's testimony should not be trusted" and that Defendant's testimony was corroborated by other officers and "has the ring of truth. . . ." *Id.* at 19. Defendant fails to recognize that, while the standard for granting a Rule 59(a) motion for a new trial is more lenient than that for granting judgment as a matter of law, it is still improper for the Court to grant a new trial when "resolution of the issues depended on assessment of the credibility of the witnesses." *Landau,* 155 F.3d at 105. The jury was entitled to credit Plaintiff's testimony and the Court should not disturb that assessment. Accordingly, Defendant's request for a new trial is denied.

*Punitive Damages*

Finally, Defendant argues that the Court should vacate the punitive damages award and order a new trial on the appropriate damages amount pursuant to Federal Rule of Civil Procedure 59(e). The Court finds that the record was sufficient to support the jury's determination that punitive damages were warranted, and that the award of $2600.00 was not impermissibly high. Defendant's motion is denied.

 "Punitive damages are available in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Lee v. Edwards,* 101 F.3d 805, 808 (2d Cir.1996) (quoting *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). The jury found La Vecchia liable for malicious prosecution of Ellis. Because an element of the malicious prosecution claim is actual malice on the part of the defendant,

the finding of liability for malicious prosecution supports an award of punitive damages. The jury was also entitled to credit, and to consider in formulating the punitive damages award, trial testimony from Ellis about La Vecchia's conduct and about Ellis' own mental suffering after his arrest, including his humiliation, his need to retain a criminal defense lawyer, and his need to make repeated trips to the courthouse to answer the criminal charges. (Tr. 172: 14–24, 377:21, 388–11.)

 The punitive damages award was also not impermissibly high under the three guideposts of *Gore:* degree of reprehensibility of the defendant's conduct, ratio of punitive damages to actual or potential harm to the plaintiff, and the civil or criminal sanctions available for such conduct. *Gore,* 517 U.S. at 575, 116 S.Ct. 1589. Of these three guideposts, the most significant for this case, where the jury awarded Plaintiff $1.00 in nominal damages, is the ratio of the $2600.00 punitive award to the compensatory award. While the Supreme Court has limited punitive damage awards in recent years, it has also rejected a strict mathematical formula to determine the appropriate compensatory-to-punitive damage ratio in all cases. *See State Farm Mut. Auto. Ins. Co.,* 538 U.S. at 425, 123 S.Ct. 1513; *Gore,* 517 U.S. at 582, 116 S.Ct. 1589.

The Supreme Court noted in *Gore* that "low awards of compensatory damages may properly support a higher ratio than high compensatory awards, if, for example, a particularly egregious act has resulted in only a small amount of economic damages. A higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm may have been difficult to determine." *Gore,* 517 U.S. at 582, 116 S.Ct. 1589. In its most recent punitive damages decision, *Exxon Shipping Co. v. Baker,* the

Court reiterated that "an award of nominal damages ... is enough to support a further award of punitive damages, when a tort, ... is committed for an outrageous purpose, but no significant harm has resulted." ——— U.S. ———, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) at *13 (quoting Restatement (Second) of Torts § 908, cmt. c, (1979)). Accordingly, the jury award of $2600 comports with Supreme Court guidance and is not excessive.

## CONCLUSION

For the aforementioned reasons, Defendant's motion for judgment as a matter of law, and in the alternative for a new trial and to strike the punitive damages award, is denied in its entirety. This Memorandum Order resolves Docket Entry No. 44.

The Clerk of Court is respectfully requested to enter judgment upon the jury verdict in favor of Plaintiff, in the amount of $2601.00.

SO ORDERED.