Brian RARICK, Plaintiff,

v.

Mark J. DeFRANCESCO, personally and in his capacity as an officer/employee of the Albany County Sheriff's Department; Craig Apple, personally and in his capacity as an officer/employee of the Albany County Sheriff's Department; Ronald Bates, personally and in his capacity as an officer/employee of the Albany County Sheriff's Department; and the Albany County Sheriff's Department, Defendants.

Civil No. 98–CV–1160 (FJS/RWS).

United States District Court,
N.D. New York.

April 28, 2000.

Brian E. Donohue, Office of Brian E. Donohue, Troy, NY, for Plaintiff.

Eugene E. Napierski, Blair Williams Todt, Carter, Conboy Law Firm, Albany, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER

RALPH W. SMITH, Jr., United States Magistrate Judge.

This case arises under 42 U.S.C. §§ 1983 and 1988; the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; and the common law of New York State. The parties have consented to have the undersigned conduct any and all further proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c). Presently before the Court is Defendants' motion for summary judgment (hereinafter the "Motion"). For the reasons set forth below, the Court grants the Motion in part and denies it in part.

### I. *Standard of Review*

Pursuant to Fed.R.Civ.P. 56(c), a court may grant a party's motion for summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir.1996). When analyzing the motion, the court's function "is not to weigh the evidence, make credibility determinations or resolve issues of fact, but rather to determine whether, drawing all reasonable inferences from the evidence presented in favor of the non-moving party, a fair-minded jury could find in the non-moving party's favor." *Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir.1997) (citing *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party satisfies this standard, the burden shifts to the non-moving party to set forth specific facts indicating that genuine issues of material fact exist. *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir.1996). In opposing the motion, the non-moving party may not merely rely upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Where the evidence in the record could reasonably support a verdict in favor of the non-moving party, the court must deny the moving party's motion. *Beatie*, 123 F.3d at 711 (citing *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court will grant the moving party's motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## II. *Statement of Facts*

Viewing the evidence in the light most favorable to Plaintiff, the facts are as follows. On or about March 1, 1997, Plaintiff spoke by telephone with his friend, Brian Myers.[1] Plaintiff had previously asked Myers if he could borrow Myers' flatbed truck to go buy feed for his pigs. Myers told Plaintiff that he and his cousin, Joseph Clark, had delivered the truck to Plaintiff's yard; instead of being empty, however, the truck contained two engines and two transmissions (hereinafter "the engines"). Although Myers did not explicitly state that the engines were stolen, he informed Plaintiff that Clark was in trouble with the police. According to Myers, Clark thought that the Albany County Sheriff's Department (hereinafter "the Sheriff's Department") would soon be coming to his house, and he wanted to remove some things and place them "wherever he could." Plaintiff learned that Clark's troubles also involved Myers and that Myers was cooperating with the Sheriff's Department. Myers told Plaintiff that he had already turned in some property to the Sheriff's Department and that he would arrange for the engines to be turned in as well.

After Plaintiff ended his call with Myers, he unloaded the engines from the truck, placed them in his yard, and took the truck to the feed store. That night it rained, and Plaintiff decided to wait for the grass to dry before driving the truck onto his yard to reload the engines. A couple of days later,[2] Plaintiff and Myers reloaded the engines onto the truck, and Myers turned the engines over to the Sheriff's Department.

On March 10, 1997, Defendant Deputy Ronald Bates[3] came to Plaintiff's house and informed him that the engines had been stolen from their owners. By this point, Plaintiff had learned from television

---

1. The record is unclear as to whether Plaintiff initiated the call to Myers or Myers initiated the call to Plaintiff *Compare* Rarick Aff. ¶ 9 (stating that Myers called Plaintiff shortly after Plaintiff had awakened on the morning of March 1, 1997) *with* Rarick Aff. Ex. 4 (statement by Myers that Plaintiff called him during the weekend of March 1–2, 1997). However, because this portion of the facts is immaterial to the Court's resolution of the Motion, the Court does not consider which version is more advantageous to Plaintiff for purposes of summary judgment.

2. It is not clear from the record exactly how many days passed before the engines were reloaded onto Myers' truck. *See* Compl. ¶¶ 9–10, 15 (two days elapsed between time that

Plaintiff discovered the engines on his property and time that Myers turned them over to the Sheriff's Department); Rarick Aff. Ex. 4 (same); Rarick Aff. ¶¶ 9–15, 22 (a "few days" elapsed); and Rarick Dep. at 86 (three to four days elapsed). Critically, Defendants have not submitted any official records indicating when Myers turned the engines over to the Sheriff's Department. Because this issue comes before the Court on Defendants' Motion and the Court must take the facts in the light most favorable to Plaintiff, the Court assumes for present purposes that the engines were only on Plaintiff's property for two days.

3. Bates switched to his current position as an investigator in November 1997. Bates Dep. at 1.

that Clark and others had been arrested for their participation in a "chop shop operation," in which cars were stolen and dismantled so that their parts could be resold for profit. Plaintiff and Bates walked around Plaintiff's property, and Plaintiff showed Bates where he had placed the engines when he had unloaded them from the truck to go buy feed. Bates later described Plaintiff's demeanor as helpful. After walking around Plaintiff's property, Bates asked Plaintiff to follow him by car to the Sheriff's Department so that Plaintiff could give a written statement. Plaintiff agreed.

Once Plaintiff arrived at the Sheriff's Department, Bates led him into a room and asked him to sit in a chair. Plaintiff complied. Plaintiff was then handcuffed to a ring that was attached to the wall and left alone in the room. About 30–45 minutes later, Defendant Senior Investigator Mark J. DeFrancesco entered the room and began questioning Plaintiff about his possession of the engines. DeFrancesco then prepared a statement for Plaintiff to sign which purportedly summarized the information that Plaintiff had just recounted to him. After reviewing the statement, Plaintiff refused to sign it because it falsely stated that he had been advised of his *Miranda* rights and inaccurately summarized the information that he had provided.

4. DeFrancesco stated in his Information–Complaints that his decision to charge Plaintiff was limited to these two sources. *See* Rarick Aff. Ex. 5. However, DeFrancesco later testified that he also based his decision on the fact that Clark, with whom he had spoken prior to interviewing Plaintiff, had told him that Plaintiff knew that the engines were stolen, DeFrancesco Dep. at 18–19, 44–45, as well as his opinion that Plaintiff intended to sell the engines for profit. *Id.* at 63. With regard to the information allegedly provided by Clark, the Court is troubled by the fact that DeFrancesco failed to mention this evidence in his Information–Complaints against Plaintiff, and it is thus not inclined to credit this portion of DeFrancesco's testimony. In any event, however, DeFrancesco's testimony is contradicted by Plaintiff's testimony that Clark told DeFrancesco, Apple, and Bates

At that point, DeFrancesco drew up two Information–Complaints charging Plaintiff with criminal possession of stolen property in the third degree, in violation of New York Penal Law § 165.50, which is a Class D felony. These instruments were signed by DeFrancesco and witnessed by Defendant Supervisory Investigator Craig Apple. In addition to the information that Plaintiff had provided to him, DeFrancesco also relied upon information provided by Myers.[4] In a signed statement, Myers asserted the following:

> On March 03, 1997 I contacted Lt. Craig Apple of the Albany County Sheriff's Department and turned over to him two engine blocks.... I got these engines from a friend of mine named [Brian] Rarick.... [Brian] had called me over the weekend of March 01 and 02, 1997 and told me that he had these engines on his property. In light of all that had happen[ed] involving Joey Clark we decided to get the engines and turn them over to the Sheriff's Department. On Monday March [03], 1997 I went to [Brian] Rarick's house .... I helped [Brian] load these two engines [onto] my flatbed truck. We used come-a-longs and winches to load them on the truck. The engines were located next to the pens that [Brian] has pigs in on his property. They were not covered and didn't appear to have been there long.

that Plaintiff was not at all involved in the criminal operations. Rarick Dep. at 62–63. The Court assumes for purposes of this Motion that any information provided by Clark to DeFrancesco was exculpatory to Plaintiff.

With regard to DeFrancesco's opinion that Plaintiff intended to sell the engines, DeFrancesco testified that this opinion was based upon statements taken from other people during the course of the investigation of the chop shop operation. DeFrancesco Dep. at 66–67. Upon questioning, however, DeFrancesco admitted that he did not recall whether he spoke with anyone else, who was either involved with the investigation of the case or was under investigation by the Sheriff's Department, who had mentioned Plaintiff's name. *Id.* at 67, 71–73. Thus, the Court does not credit this portion of DeFrancesco's testimony.

I don't know how [Brian] Rarick came into possession of the engines for sure. I thought [he] had gotten them [somehow] from Joey Clark. The engines that I turned over to the Sheriff's [Department] are the same two that I took from [Brian] Rarick which had been stored on his property.

Rarick Aff. Ex. 4. Plaintiff was then fingerprinted, photographed, and transported to the Westerlo Town Court for arraignment. He was released on $500 bail. The charges against Plaintiff were subsequently reduced to misdemeanor possession of stolen property in the fifth degree and were later dismissed altogether.

Plaintiff now sues all Defendants in their official capacities and Defendants DeFrancesco, Apple, and Bates in their individual capacities as well. In his complaint, Plaintiff brings one cause of action alleging false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983, one cause of action alleging false arrest under state law, and one cause of action alleging malicious prosecution under state law. Defendants have moved for summary judgment on all grounds. The Court addresses each issue below.

### III. *Discussion*

### A. Official Capacity Causes of Action

#### 1. *The Albany County Sheriff's Department*

In his Memorandum of Law in Opposition to Defendants' Motion, Plaintiff consents to the dismissal of his case against the Sheriff's Department. Accordingly, the Court grants this portion of Defendants' Motion and denies Plaintiff's federal and state causes of action against the Sheriff's Department.

#### 2. *The Individual Defendants in their Official Capacities*

█ Plaintiff sues Defendants DeFrancesco, Apple, and Bates in their official capacities as agents of the Albany County Sheriff's Department. As the Supreme Court explained, "official-capacity suits generally represent only another way of

pleading an action against an entity of which an officer is an agent ...." *Monell v. Department of Soc. Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Arguably, Plaintiff's consent to dismiss his case against the Sheriff's Department extends to Plaintiff's claims against Defendants DeFrancesco, Apple, and Bates in their official capacities. Even if this were not the case, however, the Court would nevertheless deny Plaintiff's official capacity claims: in order to prevail upon his claims, Plaintiff must point to the existence of some official policy or custom. *Id.* at 694, 98 S.Ct. 2018; *see also Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law"). Plaintiff has failed to allege as much in his complaint, and he points to no evidence in his opposition to Defendants' Motion. Accordingly, the Court grants Defendants' Motion and denies Plaintiff's claims against Defendants DeFrancesco, Apple, and Bates in their official capacities.

### B. Individual Capacity Causes of Action

In order to prevail on his federal claims, Plaintiff must establish that he was deprived of a constitutional right by a person acting under color of state law. 42 U.S.C. § 1983. Defendants do not deny that they were acting under color of state law at all relevant times; thus, the Court must determine whether Defendants' actions deprived Plaintiff of his constitutional rights. *See Cerrone v. Cahill*, 84 F.Supp.2d 330, 333 (N.D.N.Y.2000).

#### 1. *Defendants' Personal Involvement in the Actions about which Plaintiff Complains*

█ As an initial matter, Defendants argue that Plaintiff's § 1983 claims against them in their individual capacities should be denied for failure to "specifically allege personal involvement by any of the named defendants herein." Defs.' Mem. of Law

at 5. In support of this claim, Defendants cite *Williams v. Smith*, 781 F.2d 319 (2d Cir.1986). In *Williams*, the Second Circuit analyzed the district court's finding that the plaintiff had failed to adequately address the defendants' argument in their motion for summary judgment that "they did not 'personally know, acquiesce or participate in any deprivation of plaintiff's constitutional rights.'" *Williams*, 781 F.2d at 323. The Second Circuit found that summary judgment was appropriate with regard to one of the defendants because there was no evidence in the record that he had participated in the alleged offenses and because the plaintiff offered no concrete evidence to the contrary. *Id.* at 324. The court found, however, that summary judgment had been improperly granted with respect to the other defendant because the plaintiff had adequately alleged that this defendant had participated in the deprivation of his constitutional rights. *Id.* With this framework in mind, the Court addresses Defendants' allegation.

■■■ In response to Defendants' argument, Plaintiff alleges in his opposition to Defendants' Motion that:

> One week [after Myers turned the engines over to the Sheriff's Department], Mr. Rarick was taken to a substation of the Albany County Sheriff by defendant Bates. There, he was interrogated and handcuffed to a wall. Defendant DeFrancesco, who had not read Mr. Rarick his *Miranda* rights, demanded that Rarick sign a statement which he had typewritten which recited that Rarick had been apprised of his *Miranda* rights. Rarick declined to do so. The statement contained several errors, including an assertion that Mr. Rarick knew the engines had been stolen. Based upon this false statement which Rarick refused to sign and a statement of Mr. Myers, the plaintiff was arrested and charged with two felonies, criminal possession of stolen property in the third degree. Aside from what Mr. Rarick had told DeFrancesco and Myers's statement, there existed no evidence connecting Mr. Rarick to the contraband. Mr. Myers's statement did not indicate any criminality on the part of the plaintiff.

> There is nothing in the record of this case which indicates that DeFrancesco, Apple, and Bates had any information of Rarick's involvement in the chop-shop ring, other than the engines having appeared mysteriously on his property two days before Rarick arranged to have it turned over to the Sheriff's Department.

Pl.'s Mem. of Law at 3. With regard to Defendants DeFrancesco and Bates, the Court finds that Plaintiff has sufficiently responded to Defendants' allegation and demonstrated that they were personally involved in the actions that give rise to Plaintiff's § 1983 claim. With regard to Defendant Apple, however, the Court finds that Plaintiff has not demonstrated personal involvement sufficient to overcome Defendants' Motion.[5] The Court thus re-

5. Moreover, even if the Court found that Plaintiff had sufficiently demonstrated that Defendant Apple was personally involved with the actions alleged in the complaint, it would nevertheless grant Apple's Motion on the grounds that Plaintiff has failed to establish that Apple falsely arrested or maliciously prosecuted him either under § 1983 or New York common law. As discussed *infra,* the existence of probable cause is a complete defense to actions for false arrest and malicious prosecution under both § 1983 and New York law. *Marshall v. Sullivan,* 105 F.3d 47, 50 (2d Cir.1996) (citations omitted). The Second Circuit has held that a police officer's determination of probable cause may be based upon the allegations of fellow police officers. *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000) (citing *Bernard v. United States,* 25 F.3d 98, 102–03 (2d Cir.1994)). In the present case, the only evidence tying Apple to Plaintiff's arrest is that he was a supervisor in charge of the criminal investigation unit and acknowledged DeFrancesco's Information–Complaints that charged Plaintiff with criminal possession of stolen property in the third degree, in violation of New York Penal Law § 165.50. Apple Dep. at 6, 27–28; Rarick Aff. Ex. 5. Under *Martinez,* Apple was clearly entitled to rely upon the allegations contained in DeFrancesco's Information–Complaints. The Court thus concludes that Apple had probable cause to acknowledge the

jects Defendants' argument with respect to Defendants DeFrancesco and Bates but accepts it with respect to Defendant Apple, and it accordingly denies all of Plaintiff's claims against Defendant Apple.

### 2. Plaintiff's False Arrest Claims

#### a. Sufficiency of Plaintiff's Allegations

■ To establish a claim for false arrest under either 42 U.S.C. § 1983 or New York law, a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) he was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Campanaro v. City of Rome*, 999 F.Supp. 277, 280 (N.D.N.Y.1998). Defendants[6] move for summary judgment on Plaintiff's false arrest claims on the grounds that Plaintiff fails to allege each of these elements. The Court rejects this argument.

■ In *Capital Dist. Physician's Health Plan v. O'Higgins*, 939 F.Supp. 992 (N.D.N.Y.1996), the court held that:

> Under Fed.R.Civ.P. 8(a) a claim for relief in a complaint, besides alleging grounds for federal jurisdiction, need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for judgment for the relief the pleader seeks." Rule 8(e)(1) further instructs the pleader to make his averments "simple, concise, and direct."
>
> The Federal Rules of Civil Procedure abandon the arcane and ancient distinctions that encumbered former pleading practice in favor of "notice pleading." *See Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80[ ] (1957). This theory is liberal to the pleader. A complaint need not state "facts," "ultimate facts," or even "facts sufficient to constitute a cause of action." *Wade v. Johnson Controls, Inc.*, 693 F.2d 19, 21 (2d Cir.1982) (citing 2A James Wm. Moore, *Moore's Federal Practice* ¶ 8.13 (2d ed.1995)). All that is required is that a defendant receive fair notice of the nature of the claim and the grounds upon which it rests. *Conley*, 355 U.S. at 47, 78 S.Ct. 99[.]

*Capital Dist.*, 939 F.Supp. at 998. In the present case, Plaintiff alleges in his complaint that, on March 1, 1997, he discovered on his property two motor vehicle engines, which were loaded onto a flatbed truck, that were not his. Compl. ¶¶ 10, 12. Plaintiff spoke with Myers, the owner of the flatbed truck, that morning and was told that the engines might have been stolen by a person or persons involved in a "chop-shop" conspiracy. *Id.* ¶¶ 11, 12. Myers told Plaintiff that he had been implicated in the conspiracy and that he was cooperating with the Sheriff's Department. *Id.* ¶ 13. Myers further told Plaintiff that he would arrange for the engines to be turned over to the Sheriff's Department.

Information–Complaints; because there is no other evidence upon which Plaintiff bases his claims against Apple, Plaintiff's claims of false arrest and malicious prosecution under both § 1983 and state law must fail. Further, to the extent that Plaintiff attempts to hold Apple liable in his supervisory capacity, he does not set forth evidence sufficient to state a claim under either federal or state law. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995) (holding that a supervisory defendant may be held liable under § 1983 if the plaintiff shows that the defendant participated directly in the alleged constitutional violation, failed to remedy the violation after being informed of its existence, either created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, was grossly negligent in supervising

subordinates who committed the wrongful acts, or exhibited deliberate indifference by failing to act on information that the unconstitutional acts were occurring) (citations omitted); *Bruno v. Codd*, 64 A.D.2d 582, 583, 407 N.Y.S.2d 165, 167 (1978) (holding that defendant supervisors may not be held liable for actions of their subordinates absent a showing that the actions were done at the supervisor's direction).

**6.** Because the Court has granted Defendants' Motion in all respects with regard to Defendants The Albany County Sheriff's Department and Apple, the Court's use of the term "Defendants" in this Memorandum Decision and Order shall henceforth be understood to apply only to Defendants DeFrancesco and Bates.

*Id.* ¶ 14. In fact, on March 3, 1997, Myers turned the engines over to the Sheriff's Department. *Id.* ¶ 15. Although Plaintiff cooperated with the Sheriff's Department during its investigation of the theft of the engines, he was arrested without a warrant on March 10, 1997, and charged with criminal possession of stolen property in the third degree. *Id.* ¶¶ 16–18. This arrest occurred, despite the absence of probable cause or reasonable cause to believe that Plaintiff had committed a crime. *Id.* ¶ 19. Plaintiff alleges that Defendants falsely arrested him under 42 U.S.C. § 1983 and New York common law, and he seeks both compensatory and punitive damages for his injuries. *Id.* ¶¶ 30–32, 34–35.

■ Although the complaint does not allege each element of Plaintiff's false arrest claims, under *Capital Dist.*, this was not required. The Court finds that Plaintiff's complaint sets forth a short and plain statement of his false arrest claims, which shows that he is entitled to relief, and that he demands judgment for the relief that he seeks. Further, the Court finds that the complaint provides Defendants with fair notice of the nature of Plaintiff's claims and the grounds upon which they rest. Because Plaintiff's complaint satisfies each of the requirements of notice pleading set forth in *Capital Dist.*, the Court accordingly denies Defendants' Motion on these grounds.

b. *The Merits of Plaintiff's False Arrest Claims*

Turning to the merits of Plaintiff's false arrest claims, Defendants do not contest that they intended to confine Plaintiff, that Plaintiff was conscious of the confinement, or that Plaintiff did not consent to the confinement. Thus, the only question for the Court's consideration is whether Defendants were privileged to confine Plaintiff, i.e., whether they had probable cause to arrest him. *See Lowth v. Town of*

*Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996). Before addressing this question, however, the Court must first determine when Plaintiff was arrested.

■ Although Defendants state that Plaintiff was not arrested until after Defendant DeFrancesco signed the Information–Complaints against him, DeFrancesco Dep. at 19, the Court disagrees. An arrest occurs when an individual is restrained and his freedom of movement is restricted. *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir.1991). In determining this issue, the Court considers what a reasonable person, innocent of any crime, would have thought had he been in Plaintiff's position. *Peterson v. County of Nassau*, 995 F.Supp. 305, 314 (E.D.N.Y.1998). Further, an encounter with police may ripen into an arrest if the encounter becomes too intrusive or continues for too long. *United States v. Scheets*, 188 F.3d 829, 841 (7th Cir.1999). With these standards in mind, the Court examines the facts of the present case.

■ On the one hand, the Court finds that Plaintiff was not under arrest when he agreed to follow Defendant Bates in his own car to the Sheriff's Department. On the other hand, if Plaintiff was, as he claims, handcuffed to a wall upon his arrival at the Sheriff's Department, such restraint would clearly constitute an arrest under *Posr. See also Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir. 1993) (finding that handcuffing and fingerprinting defendant was functional equivalent of arrest) (citations omitted); *United States v. Edwards*, 67 F.Supp.2d 1205, 1211 (D.Colo.1999) (finding that handcuffing of defendant constituted arrest where defendant was not armed and did not attempt to flee, but rather was engaged in casual conversation at the time he was detained) (citations omitted); *United States v. Maldonado–Espinosa*, 767 F.Supp. 1176, 1188 (D.P.R.1991) (finding that full custodial arrest of suspects began at point that they were handcuffed to chairs and read *Miranda* warnings).[7] Re-

7. Although Defendants argue to the contrary, the Court assumes for purposes of the Motion that Plaintiff correctly asserts that he was handcuffed to a wall upon his arrival at the Sheriff's Department. The Court is unable, however, to resolve the implications of this assertion for two separate reasons. First,

gardless of whether Plaintiff was handcuffed upon his arrival at the Sheriff's Department, however, the Court finds that Plaintiff's detention was sufficiently long to constitute an arrest. Plaintiff claims that he was detained for approximately three hours, *see* Rarick Dep. at 17, 47,[8] and although the Supreme Court has declined to set an outside time-limit for a reasonable detention, it has held that a 90-minute detention was unreasonable on the basis of its duration alone. *United States v. Place*, 462 U.S. 696, 709, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Further, because both Defendants DeFrancesco and Bates interacted with Plaintiff during his three-hour detention, the Court finds that both Defendants intended to and did confine Plaintiff and are thus responsible for his arrest.

■ Having concluded that Plaintiff was effectively arrested by Defendants DeFrancesco and Bates, the Court next considers whether Defendants had probable cause to arrest Plaintiff. The Second Circuit has held that "probable cause to arrest exists when [police] officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) (citations omitted). In reviewing the police officers' actions, a court must consider those facts that were available to the officers immediately before and at the time of the arrest.

*Lowth*, 82 F.3d at 569. The test is not a rigid one, but, rather, depends upon the facts and circumstances of the case. *Dale v. Kelley*, 908 F.Supp. 125, 133 (W.D.N.Y. 1995). Further, evidence of a subsequent dismissal, acquittal, or reversal on appeal is admissible to refute a claim of probable cause. *Weyant*, 101 F.3d at 852. Finally, the standard of probable cause under § 1983 is substantially the same as the standard of reasonable cause under New York law. *Dale*, 908 F.Supp. at 133 (citations omitted).

■ In the present case, Defendants argue that they had probable cause to believe that Plaintiff was guilty of criminal possession of stolen property in the third degree, in violation of New York Penal Law § 165.50, and they base their argument upon the statements that Plaintiff made to DeFrancesco, as well as a written statement provided by Myers. Rarick Aff. Ex. 5–7 (statement by DeFrancesco in his Information–Complaints that his allegations were based upon Plaintiff's statements to him and upon Myers' written statement). A person is guilty of violating § 165.50 when (1) the person knows that he possesses the property at issue; (2) the person knows that the property is stolen; (3) the person holds the property with the intent of (a) benefitting himself or someone other than the owner of the property or (b) impeding recovery of the property by the owner; and (4) the value of the property exceeds three thousand dollars. N.Y. Penal Law § 165.50. Further, "[a] person

Plaintiff alternately claims that Defendant Bates and Defendant DeFrancesco handcuffed him to the wall at the Sheriff's Department. *Compare* Rarick Dep. at 17, 27–28 (claiming that Defendant Bates handcuffed him to the wall) *with* Rarick Aff. ¶ 30 (claiming that Defendant DeFrancesco handcuffed him to the wall). It is thus impossible for the Court to determine which Defendant handcuffed Plaintiff to the wall, and, as a result, which Defendant would thus be held directly responsible for his arrest. Second, the record is devoid of any evidence necessary to determine whether the Defendant who handcuffed Plaintiff acted independently, in which case, he would be deemed to be solely responsible

for arresting Plaintiff, or whether the Defendant who handcuffed Plaintiff acted either in concert with or at the direction of another Defendant, in which case, all participating Defendants would be deemed to have arrested Plaintiff under *Colon* and *Bruno*. *See supra* n. 5.

8. Moreover, even under Defendants' version of the facts, Plaintiff was detained for two-and-a-half hours prior to being arrested. *See* Bates Dep. at 19, 21 (testifying that, according to police records, Plaintiff was advised of his *Miranda* rights on March 10, 1997, at 1:25 p.m. but was not arrested until 4:00 p.m. that afternoon).

acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists." *Id.* § 15.05(2). In the present case, assuming arguendo that each of the other elements of § 165.50 are satisfied, there is no evidence to suggest that Plaintiff held the property with the intent of benefitting himself or someone other than the owner of the property or impeding recovery of the property by the owner.[9]

With regard to Plaintiff's statements, the evidence, taken in the light most favorable to Plaintiff, shows that Plaintiff was told by Myers that Clark had placed the engines on Plaintiff's property and that Myers said that he would make arrangements to turn the engines over to the Sheriff's Department. Rarick Aff. ¶¶ 14–15. In fact, Myers did so a few days later. *Id.* ¶¶ 22–23, 26. Myers' statement essentially corroborates Plaintiff's version of the facts. *See id.* Ex. 4. There is simply no evidence in the record that DeFrancesco or Bates could have relied on, or that otherwise exists, that Plaintiff held the property with the intent of benefitting himself or someone other than the owner of the property or impeding recovery of the property by the owner. Because Defendants lacked any evidence of this element of § 165.50, the Court finds that a person of reasonable caution would not have thought that Plaintiff was guilty of criminal possession of stolen property in the third degree. The Court thus rejects Defendants' claim that they had probable cause to arrest Plaintiff and denies their Motion on these grounds.[10]

### 3. *Defendants' Malicious Prosecution Claims*

To establish a claim for malicious prosecution under federal or state law, a plaintiff must show that: (1) the defendant commenced a criminal proceeding against him; (2) the proceeding terminated in the plaintiff's favor; (3) the defendant lacked probable cause to believe that the plaintiff was guilty of the crime charged; and (4) the defendant acted with malice. *Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir.1994) (citing *Martin v. City of Albany,* 42 N.Y.2d 13, 16, 364 N.E.2d 1304, 1306–07, 396 N.Y.S.2d 612, 614 (1977)). In addition, to establish a claim for malicious prosecution under federal law, the plaintiff must also show that his injuries were caused by a deprivation of liberty that is guaranteed by the Fourth Amendment. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 116 (2d Cir.1995).

Defendants do not challenge Plaintiff's claim for malicious prosecution under state law, and, thus, the Court assumes for purposes of this Motion that Plaintiff has satisfied each element of his prima facie case. Defendants argue, however, that Plaintiff's claim for malicious prosecution fails under § 1983 on the grounds that Plaintiff has neither alleged nor pointed to the existence of a post-arraignment deprivation of liberty that rises to the level of a constitutional violation. In support of this argument, Defendants cite *Singer.* A review of the facts in *Singer,* however, reveals that they are distinguishable from those in the present case.

In *Singer,* the Second Circuit analyzed when the seizure of an accused

9. In their Motion, Defendants attempt to rely upon New York Penal Law § 165.55, which provides in part: "A person who knowingly possesses stolen property is presumed to possess it with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." N.Y. Penal Law § 165.55[1]. The Court finds, however, that the presumption is not applicable to the facts of the present case because there is no evidence in the record to indicate that either Defendant DeFrancesco or Defendant Bates knew of, let alone relied upon, this presumption when they decided to arrest Plaintiff.

10. Further, the record shows that the charges against Plaintiff were ultimately dismissed. Defs.' Mem. of Law at 3. Under *Weyant,* this evidence is also admissible to refute Defendants' claim of probable cause.

may form the basis of a § 1983 claim for malicious prosecution under the Fourth Amendment. As the Second Circuit explained, the accused must show that the seizure was effected " 'pursuant to legal process.' " *Singer*, 63 F.3d at 116–17 (quoting *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). In general, this "legal process" will be satisfied in one of two ways: it may take the form of a warrant, such that the ensuing arrest satisfies this standard, or it may take the form of a subsequent arraignment, such that any post-arraignment deprivations of liberty might satisfy this standard. *Id.* at 117 (citations omitted). A warrantless arrest that occurs before a suspect is arraigned, therefore, does not constitute a seizure effected pursuant to legal process because no legal process was utilized. *Id.* Although such action may give rise to a federal claim for false arrest, it will not support a federal claim for malicious prosecution. *Id.*

Under *Singer*, Plaintiff's warrantless arrest, without more, will not support his § 1983 claim for malicious prosecution; rather, in order to prevail, Plaintiff must demonstrate the existence of a post-arraignment deprivation of liberty. In fact, Plaintiff was required to post bail in order to be released from jail while the charges against him were pending. Both the Supreme Court and the Second Circuit have suggested that the restrictions that usually attach to a release on bail may constitute a seizure under the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 275 n. 7, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Singer*, 63 F.3d at 117. Because this issue has not been finally resolved by either the Supreme Court or the Second Circuit, the Court is not willing to speculate, on a motion for summary judgment, whether the posting of bail may constitute a post-arraignment deprivation of liberty such that Plaintiff's arraignment constitutes the requisite legal process under the Fourth

Amendment.[11] Accordingly, the Court denies Defendants' Motion on these grounds.

*4. Defendants' Claim of Qualified Immunity*

As a general rule, public officials are entitled to qualified immunity for their actions either if their conduct does not violate clearly established constitutional rights or if it was objectively reasonable for them to believe that their conduct did not violate those rights. *Weyant*, 101 F.3d at 857 (citations omitted). Where an official moves for summary judgment, a court will grant his Motion if it determines that the only conclusion that a rational jury could reach is that reasonable officials would dispute whether the official's conduct was legal under the circumstances. *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir.1995).

In the present case, and viewing the facts in the light most favorable to Plaintiff, the Court finds that Defendants are not entitled to qualified immunity on either the false arrest or malicious prosecution claims. With regard to Plaintiff's false arrest claims, the right not to be arrested without probable cause is well-established. *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir.2000) (citations omitted). Moreover, it was not objectively reasonable for Defendants to believe that their conduct did not violate this right because there is simply no evidence that Plaintiff held the property with the intent of benefitting himself or someone other than the owner of the property or impeding recovery of the property by the owner. Because such evidence does not even arguably exist, the Court determines that a rational jury could not dispute that Defendants' decision to arrest Plaintiff was not legal under the circumstances. Accordingly, the Court finds that Defendants are not entitled to qualified immunity on Plaintiff's false arrest claim.

---

**11.** Furthermore, there is no evidence in the record to indicate what, if any, restrictions were imposed on Plaintiff when he was released on bail.

Further, because Defendants did not have probable cause to arrest Plaintiff for violating New York Penal Law § 165.50, they could not have had probable cause to actually bring formal charges against him. *See, e.g., Cook,* 41 F.3d at 79 ("No reasonable law enforcement officer could think it lawful to charge a person with a crime without probable cause . . . ."). As with Defendants' claim of qualified immunity on Plaintiff's false arrest claim, the Court finds that Defendants are not entitled to qualified immunity on Plaintiff's malicious prosecution claim because a rational jury could not dispute that Defendants' decision to prosecute Plaintiff for violating § 165.50 was not legal under the circumstances. Thus, the Court denies Defendants' Motion for qualified immunity on Plaintiff's malicious prosecution claim as well.

## IV. *Conclusion*

For the reasons set forth above, it is hereby

ORDERED that Defendants' motion for summary judgment on behalf of the Sheriff's Department is GRANTED; and

ORDERED that Defendants' motion for summary judgment on behalf of Defendants DeFrancesco, Apple, and Bates in their official capacities is GRANTED; and

ORDERED that Defendants' motion for summary judgment on behalf of Defendant Apple in his individual capacity is GRANTED; and

ORDERED that Defendants' Motion is in all other respect DENIED.